IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03672

JANINE NEATE,

    Plaintiff,

v.

BRON TAPES, INC., a Colorado corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Janine Neate, by and through her attorneys, Sweeney & Bechtold, LLC, hereby submits her Complaint as follows:

## INTRODUCTION

1. This is an employment discrimination suit brought by a former employee of Bron Tapes, Inc. ("Bron") who was discriminated against based on sex and her association with a person with a disability and retaliated against for her complaints of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"). She further was prevented from exercising her rights to care for a close family member and retaliated against for attempted exercise of those rights in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.* ("FMLA").

## PARTIES

2. Plaintiff Janine Neate is a Colorado resident.

3. Defendant Bron is a Colorado corporation.

4. Bron's principal office and registered agent are located at 875 W. Ellsworth Avenue, Denver, Colorado 80223.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, in that this action arises under federal law, specifically Title VII, the ADA, and the FMLA.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

7. At all relevant times, Defendant Bron was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII, 42 U.S.C. § 12111(5)(A) of the ADA, and 29 U.S.C. § 2611(4) of the FMLA.

8. The procedural prerequisites for Plaintiff's Title VII and ADA claims have been met: Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a Notice of Right to Sue on September 30, 2019.

## SPECIFIC ALLEGATIONS

9. Plaintiff is a woman.

10. Plaintiff worked at Bron as a Sales Representative from June 2009 until she was terminated on April 8, 2019.

11. Bron is a supplier of pressure sensitive tapes, sealants, and adhesives. It operates ten branches nationwide.

12. At all times during her employment, Plaintiff's performance was satisfactory or better.

13. During the last few years of Plaintiff's employment, due to her significant tenure, experience, and established book of business, she was considered a veteran Sales Representative.

14. In the months before her termination, Plaintiff's performance was outstanding.

15. In January and February 2019, Plaintiff had the two strongest sales months of her entire career.

16. During Plaintiff's employment, Bron used HubSpot and the Wufoo Daily Call Log System in order to track sales data.

17. HubSpot is a Customer Relationships Management ("CRM") system that tracks Sales Representatives' customer interactions and sales, including their notes and e-mail correspondence, phone calls, and in-person visits with clients.

18. Wufoo is a CRM system that exclusively tracks cold calls, which is the method that less experienced Sales Representatives use for sales.

19. Bron began using Wufoo in January 2019.

20. It was widely known among Bron's Sales Representatives and sales management that use of Wufoo negatively impacted Sales Representatives' sales performance because of the additional administrative burden that it entailed.

21. Although Bron represented that Wufoo was to be used by everyone at its Colorado branch, in practice the company only selectively enforced its use with those employees who it sought to push out of the company.

22. As a result, neither Plaintiff nor other veteran Sales Representatives used Wufoo.

23. In recognition of Wufoo's ineffectiveness, Bron's Colorado branch ceased using the system approximately two months after Plaintiff's termination.

24. As of her termination in April 2019, Plaintiff was the only female Sales Representative out of the 40 to 45 total representatives at the company.

25. For years prior, Plaintiff's supervisor, Kevin Kelly had been trying to force Plaintiff out of the company.

26. For example, in 2011, Mr. Kelly terminated Plaintiff while she was at home recovering from back surgery.

27. Bron's then-President, Chuck Berry, reversed Mr. Kelly's decision, rehired Plaintiff, and placed her under Mr. Berry's direct supervision.

28. Shortly after Mr. Berry passed away in 2018, Plaintiff resumed reporting to Mr. Kelly, who told her that Mr. Kelly had never liked her because she was "different."

29. Because the only difference between Plaintiff and the other Sales Representatives was her sex, Plaintiff reasonably inferred this to mean that Mr. Kelly did not like her because she was a woman.

30. Plaintiff was also subjected to unwelcome sexual advances from males in the company during her employment.

31. For example, in May 2016, during the company's annual sales meeting at the Stanley Hotel, Mr. Deaver tried to kiss Plaintiff as he was leaving her hotel room.

32. Plaintiff denied Mr. Deaver's advances by turning her head away and pushing him away from her.

33. In November or December 2016, Mr. Deaver sent Plaintiff a sexually explicit text message, which he later directed her to delete from her phone.

34. On January 19, 2017, Mr. Deaver came onto Plaintiff again, trying to kiss her while he pushed her up against her car.

35. Plaintiff once again tried to avoid Mr. Deaver's kiss.

36. After this incident, Mr. Deaver said that he had difficulty working alone with Plaintiff and that he did not "trust" himself because of his attraction to her.

37. After Plaintiff refused Mr. Deaver's sexual advances, he joined in Mr. Kelly's efforts to push Plaintiff out of the company.

38. Among other things:

a. In 2018, Mr. Deaver refused to adjust a commission split on one of their joint accounts for a major client for a reason that lacked basis;

b. In or around September 2018, Mr. Deaver failed to notify Plaintiff that he had received an order from a client that Plaintiff and another Sales Representative had been developing for several weeks; and

c. During a sales review meeting with Plaintiff and Mr. Kelly around October or November 2018, Mr. Deaver falsely accused Plaintiff of improperly managing one of her accounts.

39. On or around February 11, 2019, Mr. Kelly and Bron's Human Resources Manager, Janna Doyscher, issued an Employee Corrective Action to Plaintiff for complete daily call logs in Wufoo.

40. On February 19, 2019, Plaintiff sent a memo to Mr. Kelly and Ms. Doyscher in which Plaintiff responded to the Corrective Action and expressed her concern that she was being

set up to fail by being required to use Wufoo, and that Mr. Kelly planned to terminate her because of her sex.

41. No one followed up with Plaintiff in response to her February 19 memo.

42. Instead, two days later, on February 21, 2019, Mr. Kelly and Ms. Doyscher gave Plaintiff another Corrective Action for failing to enter information into Wufoo.

43. After receiving the Employee Corrective Actions, Plaintiff asked Mr. Kelly and Ms. Doyscher several times for alternative methods that she could use to provide Bron with the data it requested that would not interfere with her sales.

44. After Bron refused to work with Plaintiff on the issue, she endeavored to finish her Wufoo call logs starting on or around February 27, 2019.

45. On March 8, 2019, Plaintiff's adult son was in a serious car accident.

46. As a result of the accident, Plaintiff's son suffered neck and shoulder fractures and a severe concussion.

47. Due to his brain injuries, Plaintiff's son required 24-hour care during his recovery.

48. Plaintiff was scheduled to take vacation the week of March 18 through 22, 2019 but moved her vacation to the week of March 11 in order to care for her son.

49. On or around March 18, 2019, Plaintiff met with Mr. Kelly to review her sales numbers for February.

50. During that meeting, Mr. Kelly admitted that Plaintiff's sales numbers were "very strong," and he did not indicate that Plaintiff's prior lack of use of Wufoo was problematic.

51. Plaintiff also informed Mr. Kelly of her son's accident and the fact that she would need to take time off to care for him.

52. Around that time, Mr. Deaver conceded that Plaintiff's recent sales numbers and growth in profit margins and targets reflected how "focused and engaged" she must be with her business.

53. On or around April 2, Plaintiff discussed her need to apply for intermittent FMLA leave with Ms. Doyscher.

54. On or around April 8, Plaintiff submitted completed FMLA forms to Ms. Doyscher in which Plaintiff requested 90 days of intermittent leave, beginning retroactively on March 11, to take her son to doctors' appointments, administer medication, and ensure his safety given that he presented a significant fall risk.

55. That same day, Mr. Kelly terminated Plaintiff with Mr. Deaver and Ms. Doyscher present allegedly because of Plaintiff's failure to enter information into Wufoo and because she was not "engaged" at work.

56. Plaintiff filed Charge of Discrimination number 541-2019-02905 on September 27, 2019 with the EEOC in which she alleged that she was discriminated and retaliated against based on her sex and association with a person with a disability.

**STATEMENT OF CLAIMS**

**FIRST CLAIM FOR RELIEF**
(Sex Discrimination in violation of Title VII)

57. The foregoing allegations are realleged and incorporated herein by reference.

58. Bron subjected Plaintiff to less favorable terms and conditions of her employment based on sex as described in this Complaint, including but not limited to: telling Plaintiff that she was not liked because she was "different" from the other Sales Representatives, all of whom were male; making unwelcome sexual advances towards Plaintiff; setting Plaintiff up to fail by

7

requiring her to use Wufoo and refusing to discuss alternatives to Plaintiff's use of this CRM system; disciplining Plaintiff; ignoring Plaintiff's complaint of sex discrimination; and terminating Plaintiff.

59. The discriminatory actions of Bron towards Plaintiff were done knowingly and intentionally, or with a reckless disregard of her rights.

60. Bron's conduct constituted unlawful discrimination against Plaintiff on the basis of her sex in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

61. As a direct and proximate result of Bron's actions, Plaintiff has suffered damages including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in violation of Title VII)

62. The foregoing allegations are realleged and incorporated herein by reference.

63. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under Title VII, including discrimination based on sex.

64. As a result of Plaintiff's protected opposition to discrimination, Bron retaliated against her by subjecting her to the different terms and conditions of employment as described in this Complaint, including, but not limited to: ignoring Plaintiff's complaint of discrimination; disciplining Plaintiff; and terminating Plaintiff.

65. Bron's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

66. As a direct and proximate result of Bron's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and

emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF
(Interference with FMLA Rights in violation of the FMLA)

67. The foregoing allegations are realleged and incorporated herein by reference.

68. Plaintiff was entitled to take intermittent FMLA leave from March 2019 through June 2019.

69. Defendant terminated Plaintiff less than a week after she notified Bron of her intent to take intermittent FMLA leave.

70. Defendant's termination of Plaintiff was related to her exercise of her FMLA rights.

71. Defendant's termination of Plaintiff wrongfully interfered with her right to take additional intermittent FMLA leave in April, May, and June 2019 to care for her child with a serious health condition.

72. Defendant's interference with Plaintiff's rights under the FMLA is a violation of 29 U.S.C. § 2615(a)(1) and (b)(1).

73. As a result of Defendant's violation of the FMLA, Plaintiff has suffered damages, including lost pay and future wages, employment benefits, and other compensation.

74. In addition to her actual damages, Plaintiff is entitled to recover liquidated damages in an amount equal to her actual damages, reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. §§ 2617(a)(1)(A) and 2617(a)(3).

## FOURTH CLAIM FOR RELIEF
(Retaliation for Exercise of FMLA Rights in violation of the FMLA)

75. The foregoing allegations are realleged and incorporated herein by reference.

76. Plaintiff availed herself of a right protected under the FMLA by requesting and taking authorized intermittent FMLA leave in March 2019 and April 2019 and notifying Defendant of her intent to take additional intermittent leave through June 2019.

77. As a result of Plaintiff exercising her rights under the FMLA, Defendant terminated Plaintiff.

78. Defendant violated 29 U.S.C. § 2615(a)(2) when it terminated Plaintiff.

79. As a result of Defendant's violation of the FMLA, Plaintiff has suffered damages, including lost wages and benefits and other compensation.

80. In addition to her actual damages, Plaintiff is entitled to recover liquidated damages in an amount equal to her actual damages, reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. §§ 2617(a)(1)(A) and 2617(a)(3).

## FIFTH CLAIM FOR RELIEF
(Disability Association Discrimination in violation of the ADA)

81. The foregoing allegations are realleged and incorporated herein by reference.

82. Plaintiff was qualified for her position as a Sales Representative at all times throughout her employment.

83. Plaintiff's son has a physical impairment that substantially limits one or more major life activities, including but not limited to: performing manual tasks, walking, caring for himself, and the operation of major bodily functions, i.e., his neurological system and brain.

84. Plaintiff's son is an individual with whom Plaintiff is known to have a relationship or association.

85. Bron knew that Plaintiff's son had a disability at the time it terminated her and its actions amount to a denial of equal jobs or benefits to Plaintiff in violation of 42 U.S.C. § 12112(a) and (b)(4).

86. Bron's actions were done knowingly and intentionally or with reckless disregard of her rights.

87. As a direct and proximate result of Bron's actions, Plaintiff has suffered damages including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Janine Neate respectfully requests that this Court enter judgment in her favor and against Defendant Bron Tapes, Inc. and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Reinstatement or front pay and benefits;

D. Injunctive and/or declaratory relief;

E. Punitive damages;

F. Liquidated damages;

      G.      Attorney fees and costs of the action, including expert witness fees, as appropriate;

      H.      Pre-judgment and post-judgment interest at the highest lawful rate; and

      I.      Such further relief as justice allows.

**<u>PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.</u>**

Respectfully submitted December 24, 2019.

By:    SWEENEY & BECHTOLD, LLC

s/Charlotte N. Sweeney
Charlotte N. Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Jennifer M. Kinkade
Jennifer M. Kinkade
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: jmkinkade@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
6209 Coronado Place
Parker, Colorado 80134

**CERTIFICATION OF GOOD STANDING**

I hereby certify that I am a member in good standing of the bar of this Court.

        By:    SWEENEY & BECHTOLD, LLC

                  s/Charlotte N. Sweeney
                  Charlotte N. Sweeney
                  650 S. Cherry St., Ste. 700
                  Denver, CO 80246
                  Telephone: (303) 865-3733
                  Fax: (303) 865-3738
                  E-mail: cnsweeney@sweeneybechtold.com

                  s/Jennifer M. Kinkade
                  Jennifer M. Kinkade
                  650 S. Cherry St., Ste. 700
                  Denver, CO 80246
                  Telephone: (303) 865-3733
                  Fax: (303) 865-3738
                  E-mail: jmkinkade@sweeneybechtold.com